Filed 8/6/26  Frost v. Rolling Hills Memorial Park CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAULA FROST,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROLLING HILLS MEMORIAL PARK,<br><br>    Defendant and Appellant. | A174022<br><br>(Contra Costa County<br>Super. Ct. No. C2402653) |

Defendant Rolling Hills Memorial Park (RHMP), which owns and operates a cemetery in Richmond, California, appeals from an order denying its motion to compel arbitration of plaintiff Paula Frost's claims against RHMP.  The trial court found that an arbitration clause in a 2009 contract between the parties was modified or revoked when the parties later entered a contract in 2021 and Frost specifically did *not* agree to a proposed requirement in that contract that any disputes be arbitrated.

RHMP contends this was error.  It argues that, despite the contrary resolution of the arbitration question in the 2021 agreement, the arbitration clause in the 2009 agreement should be treated as having remained in effect.  RHMP also asserts the court erred by declining to provide a statement of

1

decision.  As we shall explain, we find no prejudicial error, and we affirm the trial court's order.

## I. BACKGROUND

A. *The 2009 Agreement*

On September 28, 2009, Frost signed an agreement with RHMP entitled Cemetery Interment Rights, Merchandise and Services Purchase/Security Agreement (the 2009 agreement).  Under this agreement, Frost purchased interment rights for herself and her husband, Harold Redic.  Her purchase included a lawn space with two lawn crypts, as well as endowment care.

The 2009 agreement is memorialized on two pages of text (i.e., the front and back sides of a sheet of paper).  The front side includes information and pricing that was filled in relating to Frost's purchase, and this page is signed by Frost and by a representative of RHMP.  The back side of the agreement, entitled "Additional Terms and Conditions," sets forth numerous terms in a small font.  These terms include an arbitration provision.  The provision is in bold, capitalized text, but still in a small font, and it is included in a longer paragraph that addresses other matters as well.

The arbitration provision states in relevant part:  "IN THE EVENT OF A DISPUTE IN ANY MANNER RELATING TO OR ARISING OUT OF THIS AGREEMENT, THE PARTIES SHALL MEET, CONFER AND NEGOTIATE IN GOOD FAITH IN AN ATTEMPT TO RESOLVE THE DISPUTE.  IN THE EVENT THE PARTIES ARE UNABLE TO RESOLVE THE DISPUTE THEMSELVES, THE DISPUTE SHALL BE RESOLVED THROUGH BINDING ARBITRATION CONDUCTED BY JUDICIAL ARBITRATION AND MEDIATION SERVICES, INC. IN CONTRA COSTA COUNTY, CALIFORNIA."  There is no blank by the arbitration provision (or

2

anywhere else on the second page of the agreement) for a customer to provide a signature or initials.

## B. *The 2021 Agreement*

Frost's husband, Harold Redic, passed away in December 2021. On December 22, 2021, Frost returned to RHMP and purchased a granite memorial marker for Redic's burial plot. Frost signed an additional set of forms (the 2021 agreement).

One page in the 2021 agreement, entitled "Specific Terms, Conditions & Agreements," includes terms covering various matters. The first provision on the page, entitled "Arbitration Agreement," states in part: "<u>BY INITIALING BELOW</u>, PURCHASER AGREES THAT ALL DISPUTES ARISING OUT OF OR RELATED TO THE AGREEMENT SHALL BE SUBMITTED TO AND DECIDED BY MANDATORY AND BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT." The term "dispute" is defined broadly to include "ALL CLAIMS, DEMANDS, CONTROVERSIES, AND DIFFERENCES, WHETHER IN CONTRACT OR IN TORT, THAT ARISE BETWEEN THE PARTIES."

The arbitration provision is followed by a box for the purchaser's initials. Frost did not initial the provision. In a declaration she later submitted in opposition to RHMP's motion to compel arbitration, Frost stated: "*I did not initial [the arbitration provision], as shown plainly in the attached 2021 Agreement.* To be candid, because they moved so fast in asking me to sign here and there, as they did back in 2009, I did not get a chance to review or approve the arbitration provision. I therefore did not initial it or agree to it. I therefore accepted the 2021 Agreements *without an agreement to arbitrate*."

3

## C. *Frost's Complaint and RHMP's Motion To Compel Arbitration*

In October 2024, Frost filed a putative class action complaint against RHMP, asserting claims for breach of contract, negligence, unfair competition (Bus. & Prof. Code, § 17200 et seq.), false advertising (Bus. & Prof. Code, § 17500 et seq.), nuisance, trespass, and intentional/negligent infliction of emotional distress. The complaint alleges RHMP placed Frost's husband's headstone at the wrong gravesite. The complaint also alleges RHMP has made other mistakes on headstones and has a pattern of poorly maintaining its property.

RHMP moved to compel arbitration based on the arbitration clause in the 2009 agreement. RHMP argued that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applied, and that all the claims in Frost's complaint were covered by the arbitration provision in the 2009 agreement. RHMP sought individual arbitration of Frost's claims (rather than class arbitration).

In her opposition to the motion to compel arbitration, Frost did not dispute she signed the 2009 agreement or that the FAA applies to the arbitration provision in that agreement. But Frost opposed the motion on several grounds, arguing no valid agreement to arbitrate was formed because of the inconspicuous presentation of the arbitration clause in the 2009 agreement; the 2009 agreement was superseded by the 2021 agreement, in which Frost did not agree to arbitrate; the arbitration clause in the 2009 agreement was procedurally and substantively unconscionable; and enforcement of the provision would violate public policy.

## D. *The Trial Court's Ruling*

The trial court issued a tentative ruling denying RHMP's motion, and after hearing argument, the court entered an order adopting the tentative ruling. In its order, the court noted Frost did not deny signing the 2009

4

agreement, which includes an arbitration provision. The court stated, however, that the 2009 agreement "is not the most recent version of [the] parties' agreement."

Turning to the 2021 agreement, the court (citing that document and Frost's declaration) found Frost "deliberately chose not to initial" the arbitration provision in the 2021 agreement. And, noting that the 2021 agreement refers to the 2009 agreement, the court found the later agreement modified the requirement in the earlier agreement that disputes between the parties be arbitrated. The court stated: "Because the terms in the later agreement reflect an affirmative decision not to agree to arbitration, this directly conflicts with the earlier requirement to submit all disputes to arbitration. Accordingly, the later agreement changed this requirement." The court continued: "Finding modification/revocation of the arbitration agreement, as one aspect of a broader agreement here, does nothing more than apply a general principle of California contract law."

Based on these findings, the court concluded RHMP "has not met its burden to show the existence of a valid agreement to arbitrate . . . ." The court stated it therefore was unnecessary to reach the parties' other arguments.

RHMP appealed.

## II. DISCUSSION

RHMP contends the trial court erred by denying its motion to compel arbitration, because there was no basis to "invalidate" the arbitration clause in the 2009 agreement. RHMP also argues the court prejudicially erred by declining to provide a statement of decision. We find no basis for reversal. And, because we reject RHMP's challenges to the court's order, we need not address Frost's argument that the order could be affirmed on other grounds,

5

such as her claims that no arbitration agreement was formed in 2009; the arbitration clause in the 2009 agreement is unconscionable; and the provision violates public policy.

## A. *Legal Standards*

"Arbitration is a favored procedure under both federal and California law. [Citations.] However, before a court may order the parties to arbitration, the court must determine the threshold question of whether a valid agreement to arbitrate exists. [Citations.] The party seeking to compel arbitration bears the burden of establishing a valid agreement to arbitrate by a preponderance of the evidence, while the party opposing arbitration bears the burden of establishing any necessary facts in defense by a preponderance of the evidence." (*Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1195 (*Jones*); see *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).)

" ' "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration." ' " (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.) In general, we review de novo a denial order that resolves only legal questions or is based on undisputed facts, while a ruling based on factual findings is reviewed for substantial evidence. (*Weeks v. Interactive Life Forms, LLC* (2024) 100 Cal.App.5th 1077, 1083–1084.)

Here, the trial court found RHMP failed to meet its burden to show, as a threshold matter, the existence of a valid agreement to arbitrate. "When a trial court's order denying arbitration is based on the finding that the appellant failed to carry its burden of proof, the question on appeal is whether that finding is erroneous as a matter of law. [Citations.] ' "Specifically, the question becomes whether the appellant's evidence was

6

(1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citations.] In other words, the appellant must show that his evidence compelled a finding that he met his burden of proof as a matter of law." (*Jones, supra,* 99 Cal.App.5th at pp. 1195–1196.)

Accordingly, when a trial court has found the appellant failed to meet its burden of proof, "it is 'misleading' to say that the review is for substantial evidence. [Citations.] Instead, the standard of review is erroneous as a matter of law standard." (*Jones, supra,* 99 Cal.App.5th at p. 1196.) Applying these standards here, we find no legal error, and we conclude the trial court's factual findings must be affirmed, whether they are reviewed for substantial evidence or under the "erroneous as a matter of law standard." (*Ibid.*)

RHMP contends that, when a trial court declines to provide a statement of decision after a proper request under Code of Civil Procedure sections 632 and 1291, the court's factual findings are reviewed de novo, rather than for substantial evidence. This is incorrect.

The cases cited by RHMP on this point—*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494 and *Otay Land Co., LLC v. U.E. Limited, L.P.* (2017) 15 Cal.App.5th 806, 821—address an entirely different question, specifically, the "doctrine of implied findings." (*Ermoian,* at p. 494; see *Otay Land Co.,* at p. 821.) *Ermoian* stated that, under this doctrine, when a trial court provides a statement of decision that "is ambiguous or omits material factual findings," a reviewing court ordinarily will imply "any factual findings necessary to support the judgment." (*Ermoian,* at p. 494; see *Otay Land Co.,* at p. 821; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 983.) But an appellant may avoid application of this doctrine if it (1) makes a proper request for a statement of decision under Code of Civil Procedure

7

section 632, and (2) brings alleged omissions or ambiguities to the trial court's attention under Code of Civil Procedure section 634. (*Ermoian,* at p. 494; see *Otay Land Co.,* at p. 821; *Thompson,* at p. 983.)

*Ermoian* and *Otay* (cases that discussed when findings may be implied) did not hold or suggest that a de novo standard of review applies to express factual findings that a trial court *has* made, whether in the context of a statement of decision or otherwise, and *Thompson* reviews both express and implied findings for substantial evidence. (See *Thompson*, *supra*, 6 Cal.App.5th at pp. 985–986.) None of these cases addresses a circumstance where a trial court declined to provide a statement of decision. On that distinct point, as we explain in part II.C, *post*, we conclude that any error by the trial court here in declining to provide a statement of decision was not prejudicial.

## B. *The Trial Court's Finding That No Valid Arbitration Agreement Existed*

As noted, the trial court found the 2021 agreement changed the requirement in the 2009 agreement that the parties arbitrate any disputes. Even assuming the FAA applies, RHMP acknowledges the FAA generally defers to state law on questions of contract formation. (*Weeks v. Interactive Life Forms, LLC, supra,* 100 Cal.App.5th at p. 1089.)

Under California law, a modification of a contract "is understood to refer to a 'change in the obligations of a party by a subsequent mutual agreement of the parties.'" (*Midwest Motor Supply Co. v. Superior Court* (2020) 56 Cal.App.5th 702, 710.) "A contract in writing may be modified by a contract in writing." (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 798.) In general, "a modification to a provision of a contract does not affect provisions that are not modified." (*Midwest Motor Supply,* at p. 711.)

8

RHMP has not shown the trial court erred in determining a modification occurred here. As the court noted, the 2021 agreement refers to the 2009 agreement (i.e., the 2009 agreement is contract number PN38152, and the 2021 agreement references that contract number). The court also noted RHMP "does not dispute that it consented to the 2021 agreement." As RHMP points out, the agreements covered the purchases of different items and services—in 2009, Frost purchased interment rights and burial plots, and in 2021, she purchased a memorial marker headstone.

But in addition to the portions of the 2009 and 2021 agreements that address the details of these purchases, each agreement includes a preprinted list of terms covering (sometimes with differing provisions) a number of subjects that are not tied specifically to one purchase or the other. These terms address such matters as the consequences of a customer's nonpayment; the consequence of a seller's breach; how payments will be allocated; RHMP's obligation to maintain an endowment care fund and certain other trust funds; and dispute resolution (i.e., arbitration). The 2021 agreement thus appears to put into place updated provisions addressing these issues.

And, at least as to arbitration, RHMP does not treat the 2009 and 2021 agreements as unrelated transactions, such as by taking the view that the arbitration provisions in the 2009 and 2021 agreements narrowly cover different aspects of Frost's lawsuit. Instead, RHMP contended in the trial court, and repeats on appeal, that the arbitration clause in the 2009 agreement (which, as noted, states arbitration is required for any dispute "in any manner relating to or arising out of this agreement") covers all of Frost's claims, including those based on contract, tort, or statute.

Similarly, RHMP argues in its appellate brief that, if Frost *had* initialed the arbitration provision in the 2021 agreement (which also requires arbitration of "all disputes arising out of or related to the agreement"), then *that* provision would have applied to Frost's claims. RHMP states, "If Ms. Frost *had* initialed the clause in the 2021 document[,] that *would have* amounted to a modification of her existing arbitration agreement—changing the arbitration provider, rules, method of selection, and place."

The trial court similarly treated the 2021 agreement as updating or changing the parties' agreement as to the arbitration question, including their understanding as to *whether* arbitration of disputes is required. Because Frost did not initial the arbitration provision in the 2021 agreement, there is no such requirement. The court found this "affirmative decision not to agree to arbitration" "conflicts with" and "changed" the previous arbitration requirement in the 2009 agreement.

RHMP presents several challenges to the trial court's finding on this point, but we find RHMP's arguments unpersuasive. First, RHMP contends no change to the arbitration requirement could have occurred because *Frost* did not assent to such a change. Pointing to Frost's declaration, RHMP argues Frost "could not have assented to—or for that matter rejected—the arbitration provision in [the 2021 agreement] because, by her own admission, she was not even aware that it existed." Without delving into the parties' arguments as to whether RHMP has been consistent in its legal arguments on this point, we reject RHMP's factual premise that Frost was not aware of the arbitration provision in the 2021 agreement.

As noted, Frost stated in her declaration that she was not given sufficient time to review the arbitration provision in the 2021 agreement, so

10

she did not initial it.  Frost stated:  "To be candid, because they moved so fast in asking me to sign here and there, as they did back in 2009, I did not get a chance to review or approve the arbitration provision.  I therefore did not initial it or agree to it."  Contrary to RHMP's assertion, this evidence does not establish Frost was unaware of the existence of the arbitration provision, and the court was not required to interpret her statement that way.  A consumer's inability "to review or approve" a provision because she is being rushed does not mean she did not see it.  Instead, Frost's statement is consistent with, and is substantial evidence supporting, the trial court's finding that Frost "deliberately chose not to initial" (i.e., she decided not to agree to) the arbitration provision in the 2021 agreement.  As the court explained at the hearing on RHMP's motion, "[Frost] did say that she didn't sign it because she hadn't had a chance to review it.  That's a deliberate decision not to sign."  Finally, to the extent RHMP seeks to pivot in its reply brief to argue Frost's intent is not relevant after all, we decline to address this belated argument.

RHMP also contends that, even if the 2021 agreement modified the 2009 agreement in *some* respects (e.g., by specifying different terms to address matters that had been covered by the earlier agreement), the arbitration clause in the 2009 agreement must be viewed as being unchanged.  RHMP relies on the principle that, in general, a modification to a provision of a contract does not affect provisions that are not modified. (See *Midwest Motor Supply Co. v. Superior Court*, *supra*, 56 Cal.App.5th at p. 711.)  But here, as the trial court found, the 2021 agreement is not silent as to arbitration.  Instead, in the 2021 agreement, RHMP proposed an arbitration provision, and Frost rejected it by deciding not to initial it.  As the trial court found, this resolution of the question whether to mandate

11

arbitration "conflicts" with (and therefore modified) the 2009 agreement's provision addressing that issue.

In a related argument, RHMP asserts Frost's decision not to initial the arbitration clause in the 2021 agreement did not "modify or revoke" the provision in the 2009 agreement, because the two arbitration provisions are different (as to such matters as the arbitration provider, the location for the arbitration, the rules applicable to the arbitration, and the allocation of fees and costs). In RHMP's view, Frost's rejection of the arbitration provision in the 2021 agreement is not "inconsisten[t]" with the clause in the 2009 agreement, and indeed might just reflect her preference for the older provision.

We are not persuaded. As noted, in the 2021 agreement the parties did not agree on a requirement that disputes be submitted to arbitration. Frost rejected it. The trial court found this result reflected "an affirmative decision not to agree to arbitration." This is apparent from the face of the document (where Frost did not initial the provision), and to the extent the court's finding on this point is viewed as a factual one pertaining to Frost's intent, we decline to second-guess the court's determination, which is based on a reasonable construction of Frost's conduct and her declaration statements about her decision. The trial court was not obligated to construe Frost's action and statements in the narrower manner suggested by RHMP (i.e., as a rejection only of the particular terms of the arbitration clause in the 2021 agreement). The resolution of the arbitration question in the 2021 agreement (reflecting a decision not to agree to arbitration) is "inconsisten[t]" with, and indeed "conflicts" with, the provision of the 2009 agreement mandating arbitration.

Finally, RHMP contends that any challenge to the validity of the 2009 agreement as a whole does not provide a basis to invalidate the arbitration clause in that agreement, because that clause is "severable and separately enforceable" under the FAA. In support of this argument, RHMP relies in part on *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 406; *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445–446; and *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 70–71. Under those decisions, when a contract contains an arbitration clause, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." (*Rent-A-Center*, at p. 70.)

This line of authority is inapposite here. As RHMP notes, the trial court stated the 2009 agreement was "not the most recent version of [the] parties' agreement." Based on this statement, RHMP suggests the court may have declined to apply the arbitration clause in the 2009 agreement based on a determination as to the validity of that agreement as a whole.

We disagree. As we read the trial court's decision, its holding is that *the arbitration provision* in the 2009 agreement was modified or revoked by the contrary resolution of that specific issue in the 2021 agreement, the terms of which reflect "an affirmative decision not to agree to arbitration." The court summarized its ruling by stating there had been a "modification/revocation *of the arbitration agreement*, as one aspect of a broader agreement . . . ." (Italics added.) As we have discussed above, RHMP has not shown the court erred in reaching that conclusion.[1]

---

[1] At oral argument, RHMP cited *Rosenthal*, *supra*, 14 Cal.4th 394, and *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, and argued that under the burden of proof scheme applied in these cases, Frost bore the ultimate burden of proof here. Since

13

## C. *The Request for a Statement of Decision*

At the hearing on the motion to compel arbitration, RHMP's counsel requested that the trial court provide a statement of decision. The court declined to prepare one, stating the requirement to do so applies to trials, not law and motion proceedings. The court also stated: "[Y]ou also have a full statement of—the equivalent of a full statement of decision in the tentative ruling, so your request is denied."

RHMP contends the court erred by declining to provide a statement of decision. RHMP relies on *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, where Division Five of this court held that, "at least where there is an adjudication of a question of fact by the court in deciding a

---

Frost bore the ultimate burden of proof, RHMP argued, it is entitled to reversal because, even under the *Jones* substantial evidence test—"the appellant must show that his evidence compelled a finding that he met his burden of proof as a matter of law" (*Jones, supra*, 99 Cal.App.5th at p. 1196)—it is uncontested that Frost signed the 2009 agreement and that was sufficient prima facie proof to shift the burden of proof to her. Putting aside the fact that neither *Rosenthal* nor *Espejo* addresses an argument as to whether the burden of proof affects the standard of review, this point is no more than a quibble.

We are not dealing with the sufficiency of RHMP's prima facie evidence of an arbitral agreement here. Clearly, based on Frost's declaration, the trial court found her proof to be more persuasive on the ultimate question of arbitrability. However one conceives of Frost's successful argument below—as a *revocation defense* (an issue on which she had the burden of proof) or simply as an argument opposing the *existence of an arbitration agreement* under the agreed contract terms as modified (an issue on which RHMP had the burden of proof)—we are satisfied that, whether we apply the more demanding formulation of the substantial evidence test in *Jones*, or the traditional formulation (see *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 65 [upholding finding of no agreement to arbitrate upon an evaluation of whether there was " 'evidence of ponderable legal significance that [was deemed] reasonable, credible and of solid value' "]), substantial evidence supports the trial court's finding in favor of Frost either way.

14

petition to compel arbitration, a request for a statement of decision in the *manner* required by section 632 obligates the court to issue one." (*Id.* at p. 689; see Code Civ. Proc., § 1291 ["A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title."]; *id.*, § 1294, subd. (a) [order denying petition to compel arbitration is appealable].) In particular, RHMP asserts a statement of decision should have been provided because the court made a factual finding that Frost "deliberately chose not to initial" the arbitration provision in the 2021 agreement.

Even assuming RHMP made a proper request for a statement of decision and that the trial court erred by denying the request, we would find any error harmless as the trial court's tentative ruling (later adopted in a written order of the court), along with its oral statements at the hearing, were sufficient to permit adequate appellate review. (See *Gurganus v. IGS Solutions LLC* (2025) 115 Cal.App.5th 327, 340–341; cf. *Metis Development LLC v. Bohacek, supra,* 200 Cal.App.4th at p. 688 [statement of decision for hearing on petition to compel arbitration needed "to enable meaningful appellate review"].)

Here, when the trial court found in its written order that Frost deliberately chose not to initial the arbitration provision in the 2021 agreement, the court supported that finding by citing to a specific paragraph of Frost's declaration, where Frost explained she did not initial or agree to the provision because she was not given time to review it. The court also orally explained its reasoning on this point at the hearing. There was a sufficient basis to permit adequate appellate review (which we have conducted in pt. II.B, *ante*).

15

## III. DISPOSITION

The order denying RHMP's motion to compel arbitration is affirmed. Frost shall recover her costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.